IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA : CRIMINAL ACTION
:
v. :
:
MARVIN DAVIS : NO. 12-188

MEMORANDUM

McLaughlin, J.   February 27, 2013

The defendant has been charged with conspiracy to commit robbery which interfered with interstate commerce, three counts of robbery which interfered with interstate commerce, and three counts of carrying and using a firearm during and in relation to a crime of violence. The defendant moves to suppress a pre-arrest statement he allegedly made to FBI agents. The Court held an evidentiary hearing on January 25, 2013, and will deny the motion.

I. Findings of Fact

Special Agent Jennifer Morrow was the lead case agent in an investigation into multiple Hobbs Act robberies that occurred within Delaware and Chester counties as well as the State of Delaware in and around November 2009 through March 2010. Based on her investigation, she believed that the defendant, Marvin Davis, had information about the Hobbs Act robberies. Special Agent Morrow wanted to interview him. At that time, Mr.

Davis was a sentenced state prisoner. There were no state charges pending against him related to her investigation. Nor was Mr. Davis facing any federal charges related to the agent's investigation or any state charges that could have coincided with the federal investigation.

Special Agent Morrow obtained a grand jury subpoena and requested that the Court issue a writ to bring the defendant from SCI Forrest into Philadelphia. The defendant was brought down to the Green Building and met with Special Agent Morrow on January 31, 2012, a few days before his scheduled grand jury testimony. Special Agent Robert Lockhart assisted Special Agent Morrow during the interview. There are normally two agents present when a witness is interviewed. One reason is for security because the defendant was an in-custody witness and the second reason is to protect the integrity of the interview.

At the beginning of the interview, Special Agent Morrow explained to Mr. Davis what a writ was and why he was in Federal prison, as opposed to state prison. She explained that a grand jury subpoena had been issued for him in connection with an investigation about which she believed he had information.

Special Agent Morrow advised Mr. Davis of his Miranda rights. Special Agent Morrow showed the defendant the subpoena. She told him the nature of the federal investigation: that there were a series of robberies that they were investigating

2

federally. She presented an FBI Advice of Rights form, FD395, to the defendant. He read it over and Special Agent Morrow then read it to him to be sure that there were not any issues with his reading and writing. The agent read it line by line and asked the defendant if he wished to waive those rights and speak with them. The defendant indicated that he understood his rights and he signed the waiver form. Special Agent Morrow and Special Agent Lockhart also signed as witnesses on the waiver. At no time did Mr. Davis tell the agent that he wanted a lawyer.

In his statement, Mr. Davis admitted to committing several robberies. At that time, he had not been charged federally or locally with any of the robberies to which he confessed.

At the conclusion of the interview, the defendant asked what the next step was. Special Agent Morrow explained that based on the information that he had given her, she was not going to recommend that he testify in front of the grand jury without an attorney. She explained the process of how you get an attorney appointed federally and the defendant said that he had an attorney on an old injury case in Delaware County. Special Agent Morrow suggested to him that it would be more beneficial to have a federal criminal attorney represent him and explained how, even if he were not charged, he could get an attorney appointed for him before going in to the grand jury. At that point,

Special Agent Morrow understood that Mr. Davis wanted to cooperate with the government.

At the time of the interview, one person had given the agent information about Mr. Davis' involvement in the robberies. The agent was working with Assistant U.S. Attorney Michelle Rotella on the investigation. Ms. Rotella was not in the interview room on January 31, 2012. The grand jury was scheduled to convene on February 2, 2012. Special Agent Morrow was notified on the 30th that the defendant was in Philadelphia. There was no written or telephonic communication with him prior to January 31st. They were in the proffer rooms on the 4th floor of the Green Building during the interview. Mr. Davis was handcuffed to the floor of the room. His handcuffs were taken off his hands and they were placed around the cuffs on his feet. The interview started between 10 and 10:30 and ended around noon. Special Agent Morrow took notes. She did the majority of the questioning. Special Agent Lockhart did not take any notes.

Special Agent Morrow typed up her notes the same day. She did not take the statement back to Mr. Davis to check for accuracy. She did not ask him to initial or sign it. She and Special Agent Lockhart signed the statement as a true and accurate representation of what occurred.

Mr. Davis' demeanor was cooperative during the interview. The agent does not recall whether the defendant asked

the source of the information she had about his knowledge of the robberies. The discussion about the attorney is not in the 302. She does not think it would be in her notes.[1] At the conclusion of the interview, the defendant asked the agent to contact his grandmother. The defendant gave her the address to go out and see his grandmother.

The person who gave the agent information about the robberies told her that Mr. Davis participated in two or three robberies. She knew that the robberies involved handguns and that 924(c) charges were imminent. And, she knew about the mandatory minimum sentencing for 924(c) violations. The agent did not consider getting the defendant an attorney before the interview.

During the interview, the defendant asked the agent about the kind of time he was facing and she answered truthfully about that. In response to her telling him about the penalties, the defendant asked how he could get out from under that. They

---

[1] During the hearing on the motion to suppress, the defendant requested Special Agent Morrow's rough notes from her interview with the defendant. The Court ordered the government to give to the Court in camera the rough notes from the interview so that the Court could review the notes to see if there is anything in there that is not in the 302 or that otherwise impacts the motion to suppress. The Court has reviewed the rough notes and the Court did not see any differences or discrepancies between the 302 and the rough notes that would bear on the present motion to suppress. The notes do not make any reference to Mr. Davis having an attorney or requesting an attorney.

then discussed being truthful from the beginning and how that helps you. They also discussed the nature of cooperation.

On April 17, 2012, the defendant came for a proffer session with Ms. Rotella and his lawyer Mr. George. Special Agent Morrow was also present. The purpose of the meeting was to see if the defendant was willing to continue to cooperate. Mr. Davis did not cooperate that day.

II. The Defendant's Testimony

The defendant testified at the suppression hearing. He admitted that he signed the Miranda waiver form after it was read to him and after he read it. But, he claims that at the beginning of the interview, he asked the agents why he was there. They told him that he was there for grand jury testimony with respect to some robberies in which he was implicated. He testified that he told them that he did not know what they were talking about. They said that they had a source who told them that the defendant was involved in the robberies and that he was looking at a jail term of eighty-seven years. The defendant testified that he asked them "about an attorney" and he told them that he had a state attorney. He was referring to his criminal defense lawyer in the case he was serving time. According to the defendant, none of the agents told him that his state lawyer would not be any good in the federal system.

6

III. Analysis

The defendant claims that his statement was coerced. He contends that he voluntarily signed the waiver form but did not voluntarily waive his rights because the agent coerced him into making a statement by telling him that his state attorney would not help him here. The defendant claims that as soon as he brought up a lawyer, the agent should have stopped questioning him and obtained an attorney for him.

The defendant's argument relies on the Court's finding as a fact that before he waived his rights and gave a statement, the defendant, in essence, asked for an attorney and was told that his attorney would not help him here. The Court does not make that finding of fact. As reflected in the Court's findings of fact, the Court finds that the defendant waived his rights and gave a statement and then raised the question of a lawyer when he asked the agent what was going to happen next. The defendant was not credible with respect to his description of what happened at the interview. He denied confessing to any crimes. He stated that he did not admit being involved in any of the robberies. For that to be true, the Court would have to find that two special agents lied about an hour to an hour and a half statement of the defendant. Special Agent Morrow would have had to have falsified her rough notes and then the 302.

7

Nor does it make sense that the government would have set up proffer sessions for the defendant to cooperate had he not admitted involvement in the robberies.  Having made the finding that the defendant waived his <u>Miranda</u> rights and gave a statement before he raised the issue of a lawyer, the Court will deny the motion to suppress.

An appropriate order follows.