IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| MARVIN DAVIS | : | No. 12-188 |
| | : | |

**MEMORANDUM**

PRATTER, J.                                                                                               AUGUST 9, 2022

In 2018, Congress passed the First Step Act, which significantly reduced the length of "stacked" terms for multiple convictions under 18 U.S.C. § 924(c). In doing so, Congress chose not to make the new penalties retroactive. Mr. Davis argues that the First Step Act's reduction in sentences is an "extraordinary and compelling reason" for the Court to grant him compassionate release. In addition, Mr. Davis argues that his particular medical conditions place him at higher risk of a severe infection from COVID-19. However, Mr. Davis's medical conditions do not warrant compassionate release and the Court of Appeals for the Third Circuit has held that, as a matter of law, the fact of altered penalties cannot count as an extraordinary and compelling reason for compassionate release. Therefore, the Court denies Mr. Davis's motion.

BACKGROUND

I.     **Mr. Davis's Motion for Compassionate Release**

Marvin Davis is currently serving a 661–month sentence after a federal jury found him guilty of one count of conspiracy to commit robbery that interferes with interstate commerce, three counts of robbery that interferes with interstate commerce, and three counts of carrying and using a firearm during and in relation to a crime of violence. 18 U.S.C. §§ 924(c), 1951(a). Mr. Davis's convictions stem from a series of robberies he committed with others between November 2009 and March 2010: a Payless Shoe Store in Clifton Heights, Pennsylvania on November 4, 2009, a

1

Dollar General in Claymont, Delaware on March 13, 2020, the Princess Market in Sharon, Pennsylvania on March 18, 2010, Bally's Chinese Restaurant in Chester, Pennsylvania on March 21, 2010, and, finally, the Coastal Mini Mart in Chester, Pennsylvania on March 22, 2010. At the time he committed the robberies, he had prior adult convictions: two for burglary and two for possession of marijuana.

In November 2013, the Court sentenced Mr. Davis to 661 months of imprisonment (approximately 55 years), three years of supervised release, restitution of $2,470, and a special assessment of $700 ($100 for each convicted count). As of the time of his motion in December 2021, Mr. Davis was serving his sentence at the United States Prison Thomson ("USP Thomson") and had served approximately 116 months with good time credit of 11 months, for a total time served of approximately 127 months. Mr. Davis is now at FTC Oklahoma City. His expected release date is August 10, 2059.

## II.     The Bureau of Prisons' Response to the COVID-19 Pandemic

The Bureau of Prisons ("the BOP") has taken many measures to "mitigate the spread of COVID-19 in [its] facilities" and protect the health of inmates. *BOP Modified Operations*, Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited August 3, 2022). The BOP limits outside visitors, limits inmate movement within the prison, requires inmates and staff to wear masks, and screens all staff daily for symptoms. If an inmate tests positive, the BOP immediately quarantines that inmate and tests and quarantines all contacts. The BOP has also put thousands of eligible prisoners—the elderly, the terminally ill, and those who have almost finished their sentences—in home confinement. 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g); CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516.

The BOP has offered vaccines to its staff members and inmates, including those at both USP Thomson and FTC Oklahoma City. *COVID-19 Vaccine Implementation*, Bureau of Prisons,

2

https://www.bop.gov/coronavirus/index.jsp (last visited August 3, 2022). FTC Oklahoma City, where Mr. Davis is presently serving his sentence, houses 942 total inmates. *FTC Oklahoma City*, Bureau of Prisons, https://www.bop.gov/locations/institutions/okl/ (last visited August 3, 2022). As of August 2022, there had been 690 inmates that had recovered and 83 staff members who had recovered from COVID-19, two inmates had died of COVID-19, and there are presently nine reported active inmate cases of COVID-19 and one reported active staff case of COVID-19 at FTC Oklahoma City. Tbl. *FTC Oklahoma*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited August 3, 2022).

## Legal Standard

For the most part, courts "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Before asking a court to modify a sentence, a prisoner must first have "fully exhausted" his administrative remedies within the prison before applying to a court.[1] 18 U.S.C. § 3582(c)(1)(A). Assuming a prisoner has met that threshold requirement, a court can, in limited circumstances, reduce a sentence for "extraordinary and compelling reasons." § 3582(c)(1)(A)(i). To count as extraordinary, the reason must be "[b]eyond what is usual, customary, regular, or common." *Extraordinary* (def. 1), *Black's Law Dictionary* (11th ed. 2019). To be compelling, the reason must be "irresistible," such that the court is "oblige[d]" or "force[d]" to reduce the sentence. *Compelling* (def. b.), in *Oxford English Dictionary* (2d ed. 1989); *Compel* (def. 1) in *id.* Examples of potential "extraordinary and compelling" reasons include terminal medical conditions, complications arising from old age, or difficult family circumstances. U.S.S.G. § 1B1.13 app. n. 1.[2] Once the prisoner has shown an extraordinary and compelling reason to

---

[1] The Government does not dispute that Mr. Davis has properly exhausted his administrative remedies here. *See* Doc. No. 125, at 3.
[2] On its face, U.S.S.G. § 1B1.13 governs a "motion of the Director of the Bureau of Prisons" for compassionate release. Thus, this "policy statement is not binding on prisoner-initiated motions." *United States v.*

3

warrant a sentence reduction, the Court must then consider the sentencing factors, set out in 18 U.S.C. § 3553, to decide if the sentence *should* be reduced, and by how much. 18 U.S.C. § 3582(c)(1)(A).

## DISCUSSION

Mr. Davis seeks compassionate release arguing that there are "extraordinary and compelling reasons" to reduce his sentence because (1) he has certain medical conditions that place him at higher risk of a severe COVID-19 infection, and (2) the First Step Act lowered the "stacked" penalties under 18 U.S.C. § 924(c). Chiefly, Mr. Davis claims that his sentence would not have been imposed under the new First Step Act, which President Trump signed into law in 2018. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Mr. Davis argues that the First Step Act altered the law as to Count Three, Five, and Seven, the convictions for which he was sentenced to a total of 660 months. In addition, Mr. Davis claims that he is at increased risk of developing a severe COVID-19 infection due to his smoking habit.

The Government opposes Mr. Davis's motion. First, the Government argues that the Court of Appeals for Third Circuit has held that the new penalties established by the First Step Act do not constitute an extraordinary and compelling reason for compassionate release. Second, the Government argues that Mr. Davis's medical conditions are not an extraordinary and compelling reason for his release.

---

*Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). Still, it is highly persuasive authority that "sheds light on the meaning of extraordinary and compelling reasons." *Id.*

4

## I. The First Step Act's Retroactive Sentence Reductions Do Not Constitute "Extraordinary and Compelling" Reasons for Compassionate Release Under Third Circuit Precedent

The First Step Act did alter the portion of 18 U.S.C. § 924(c) under which Mr. Davis was sentenced for Counts Three, Five, and Seven, but that does not provide a basis for compassionate release under binding Third Circuit precedent.

Prior to the First Step Act, a defendant who had a "second or subsequent conviction" of using, carrying, or possessing a firearm during a crime of violence or drug trafficking crime had 25 years automatically added to his sentence. 18 U.S.C. § 924(c)(1)(C)(i) (2006). Under the old version of this subsection, a Court was required to impose a consecutive 25-year term for each successive conviction under §924(c)(1)(C)(i) even if all the offenses were prosecuted in the same case. *See Deal v. United States*, 508 U.S. 129, 132 (1993). This was known as "stacking." The First Step Act altered and clarified this subsection to state that the 25-year mandatory minimum applies only if the defendant already has a prior *final conviction* for carrying a gun during a crime of violence or a drug trafficking crime. 18 U.S.C. § 924(c)(1)(C)(i) (2018); First Step Act of 2018 § 403(a); *accord United States v. Davis*, 139 S. Ct. 2319, 2324 n.1 (2019).

In passing the First Step Act, Congress chose not to make the altered sentencing under 18 U.S.C. § 924(c)(1)(C) retroactive. Instead, Congress directed that "the amendments made by this section[ ] shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act of 2018 § 403(b). In other words, the changes to § 924(c)(1)(C) would apply to crimes committed *before* the First Step Act was passed, but only if the person had not yet been sentenced. *See United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021).

Mr. Davis both committed the crime and was sentenced by the Court before the First Step Act was signed into law in 2018. Thus, the basis of his motion on this point is that the subsequent

alterations to § 924(c) provide an "extraordinary and compelling" reason for the Court to grant his compassionate release. Some courts of appeals, following similar reasoning, have treated changed penalties as an extraordinary and compelling reason for release. *See United States v. McCoy*, 981 F.3d 271, 285–86 (4th Cir. 2020); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021). But the Third Circuit, joining two other sister courts, has not. *See United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021); *accord United States v. Jarvis*, 999 F.3d 442, 443–44 (6th Cir. 2021); *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021). Thus, any theoretical changes to Mr. Davis's sentence as a result of the First Step Act would not provide a basis for this Court to grant a motion for compassionate release.

## II. Mr. Davis's Medical Conditions Also Do Not Provide a Basis for Compassionate Release

In his motion, Mr. Davis also notes that he has been an active cigarette smoker since he was a teenager, putting him at increased risk of serious illness or death from COVID-19.[3] Although not raised in his motion, Mr. Davis's medical record also lists that he has hypertension.

In order to demonstrate an "extraordinary and compelling" medical reason sufficient to qualify for compassionate release, a prisoner must show that he suffers from "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. n.1(A)(ii). It is true that hypertension and smoking habits "may" make Mr. Davis "more likely to get very sick from COVID-19." *People with Certain Medical Conditions*, Centers for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-

---

[3] In his motion, Mr. Davis also states that he has been infected with COVID-19. However, his medical records show that all of his tests for COVID-19 have been negative. *See* Doc. No. 126. But, even if Mr. Davis had been infected with COVID-19, this would also not be a reason to grant compassionate release. *United States v. Rivera*, No. 10-cr-632, 2022 WL 889048, at *3 (E.D. Pa. Mar. 25, 2022).

6

ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 3, 2022). But Mr. Davis does not argue that he is unable to care for himself or manage any of these conditions while in prison. Thus, there is no reason for the Court to grant him compassionate release on this basis. *Cf. United States v. Waters*, No. 12-cr-295-2, 2022 WL 874943, at *3 (E.D. Pa. Mar. 23, 2022).

This conclusion is further bolstered by Mr. Davis's refusal to be vaccinated against COVID-19. Mr. Davis was offered the Moderna COVID-19 vaccine on February 8, 2021, which he refused, and was offered the Pfizer COVID-19 vaccine on September 16, 2021, which he also refused. Both vaccines have been documented as highly effective against COVID-19 and identified variants such as the Delta and Omicron variants, particularly with a booster shot. *See New CDC Studies: COVID-19 Boosters Remain Safe, Continue to Offer High Levels of Protection Against Severe Disease Over Time and During Omicron and Delta Waves*, Centers for Disease Control & Prevention (Feb. 11, 2022), https://www.cdc.gov/media/releases/2022/s0211-covid-19-boosters.html (last visited August 3, 2022).

The widespread availability of COVID-19 vaccines virtually eliminates the risk of death or serious injury as a basis for compassionate release. *Garrett v. Murphy*, 17 F.4th 419, 433 (3d Cir. 2021). A prisoner simply cannot expect success with a "claim[ed] fear of risk of contracting the virus while refusing medical treatment that would drastically reduce his risk." *United States v. Garcia*, No. 14-cr-20035, 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021); *see also United States v. Gonzalez Zambrano*, No. 18-cr-2002, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021) ("Although defendant has a right to refuse medical treatment, the Court finds that it would be inappropriate to reward her refusal to protect herself by granting her release. It would be paradoxical to endorse a system whereby a defendant could manufacture extraordinary and

compelling circumstances for compassionate release by unreasonably refusing the health care afforded to them."). "[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021); *accord United States v. Rivera*, No. 10-cr-632, 2022 WL 889048, at *4 (E.D. Pa. Mar. 25, 2022).

In sum, because Mr. Davis can "provide self-care within the environment of a correctional facility" and could further protect himself from a COVID-19 infection by accepting a COVID-19 vaccine, he has not demonstrated an extraordinary or compelling reason to justify compassionate release. U.S.S.G. § 1B1.13 app. n. 1(A)(ii).

Plus, even if Mr. Davis could get over the hurdle of demonstrating an extraordinary and compelling reason for his release, which he has not, the Court must still consider the sentencing factors. 18 U.S.C. §§ 3582(c)(1)(A), 3553. Those factors would all militate strongly against release of Mr. Davis considering the severity of the offense, which included multiple robberies, his numerous disciplinary violations while in prison, the need for deterrence of such crimes, and the need to protect the public from any future such conduct by Mr. Davis. 18 U.S.C. § 3553(a).

## CONCLUSION

For the foregoing reasons, the Court denies Mr. Davis's motion for compassionate release. An appropriate order follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE