**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL ACTION NO. 12-188** |
| | : | |
| **MARVIN DAVIS** | : | |

---

**McHUGH, J.**                                                    **April 8, 2025**

## MEMORANDUM

Petitioner Marvin Davis stands convicted of conspiracy to commit Hobbs Act robbery, three substantive counts of Hobbs Act robbery, and three violations of 18 U.S.C. § 924(c) arising out of his use of a firearm.  The procedural history of this case is confusing,[1] but I have determined that there remains one issue to be addressed: Mr. Davis's contention first advanced in a motion pursuant to 28 U.S.C. § 2255, ECF 119 at 6, 17-20, as reasserted in his recent motion for "summary judgement", ECF 149, that he received ineffective assistance from counsel.  Specifically, Mr. Davis contends that his conviction is tainted because his attorney alluded to an alibi witness in his opening statement but later failed to present such a witness to the jury.  Having reviewed the record, I find no merit to this argument.

### A.  Relevant facts

It bears mention at the outset that the evidence against Mr. Davis was strong.  He was interviewed by FBI agents and admitted to his participation in five robberies, and even identified himself in photographs from surveillance video.  Judge McLaughlin denied his motion to suppress, finding that the agents had provided him with his *Miranda* rights and that his statement was

---

[1] This case was tried to verdict before the Honorable Mary McLaughlin of this court, and later transferred to the Honorable Gene Pratter.

voluntary. ECF 58-59.  Two co-conspirators, Dayon Pinder and Shanae Davis pleaded guilty and became cooperating witnesses who testified about the various robberies and provided specific details such as the getaway vehicle used, and who wielded a weapon at each robbery.

Shortly before trial, the defense identified an alibi witness. ECF 100, April 29, 2013 tr.at 19. The alibi witness had an ongoing romantic relationship with the defendant, including sharing a child together. At trial, the prosecution sought leave to impeach this witness with the defendant's prior convictions, including that the defendant had been in custody for approximately three years before trial.  Defense counsel responded that if such cross-examination were permitted, it would "undermine[] what I'm trying to accomplish. . . My goal is . . . to basically, not have the jury learn that Mr. Davis was incarcerated." *Id.* at 21. Judge McLaughlin deferred a ruling on the proper scope of cross-examination if the alibi witness were called.  *Id.* at 29-30.

During opening statements, the government stressed Mr. Davis's admissions to agents that he had participated in the crimes, the surveillance evidence, and the anticipated testimony of the two cooperators.  *Id.* at 45-50.  The defense countered, stressing that there was neither video nor audio of defendant's confession, and that defendant never signed a statement to confirm what he actually told agents, despite signing other documents that day.  *Id.*at 51-54.  Counsel attacked the credibility of the government's cooperating witnesses, whom he identified as having strong ulterior motives for their testimony.  He then concluded by mentioning that the jury would hear evidence of an alibi defense for three of the five robberies.

> You'll also hear evidence of an alibi defense.  And what that is, a legal term, alibi, means that for at least three of the five robberies with which Mr. Davis is charged, a witness will testify that he was – that she was with Mr. Davis at some other location at the same time that those robberies were committed.  As a result, no way that Mr. Davis could have participated in those robberies.
> *Id.* at 56.

As trial progressed, a review of the transcript shows that the defense strategy was to attack the credibility of cooperators and criticize the FBI's investigation technique, in particular the lack of an audio recording of Davis's statement. As cooperating witnesses placed Davis at the robberies, defense counsel made no reference on cross-examination to Davis having an alibi.

Significantly, after the prosecution rested, Judge McLaughlin engaged in a colloquy with the defendant and his counsel outside the presence of the jury, as follows:

> The Court: . . . And Mr. Dreyer, how would you like to proceed this morning on behalf of Mr. Davis, sir?
>
> Mr. Dreyer: Your honor, we have no witnesses to present at this time.
>
> The Court: Okay. And I know you had mentioned a potential alibi witness. Have you discussed with your client the fact that the decision has been made not to put on that witness or any other witnesses?
>
> Mr. Dreyer: That is correct, Your Honor.
>
> The Court: Okay, all right. And your client has decided not to take the stand as I understand it?
>
> Mr. Dreyer: That is correct, Your Honor.
>
> The Court: And you discussed that with Mr. Davis?
>
> Mr. Dreyer: I did.
>
> The Court: All right. Mr. Davis, have you discussed both of those things with your counsel?
>
> The defendant: Yes, Your Honor.
>
> The Court: All right. And has he accurately stated your decision in this matter?
>
> The defendant: Yes, Your Honor.

ECF 102, May 1, 2013 tr. at 3.

**B.  Application of the *Strickland* factors**

To prevail on a claim of ineffectiveness of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must establish deficient performance and prejudice sufficient to undermine the validity of a jury's verdict.  Mr. Davis's arguments fall short as to both requirements.

The controlling standard for attorney performance is "reasonableness under prevailing professional norms."  *Strickland*, 466 U.S. at 688.  A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Id.* at 690.  There is a strong presumption that counsel has rendered adequate assistance and that all significant decisions were made in the exercise of reasonable professional judgment as a matter of sound trial strategy.  *Id.* at 689; *see also Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999); *Reese v. Fulcomer*, 946 F.2d 247, 256-57 (3d Cir. 1991); *United States v. Gray*, 878 F.2d 702, 710 (3d Cir. 1989).  The Court in *Strickland* cautioned that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  466 U.S. at 689.  As such, strategic choices made by counsel following a thorough investigation are difficult to challenge, and the standard of review is "highly deferential."  *Id.*

I cannot say that counsel's decision not to present the alibi witness reflects substandard performance.  Trials evolve organically, and lawyers must react to developments as the case proceeds and constantly re-evaluate how best to proceed.  The Third Circuit has specifically addressed the situation presented by this case, observing that even though unkept promises in an opening statement come with some risk, it is permissible for a lawyer to "promise to produce

evidence in his opening statement and then change his mind during the course of the trial."
*United States ex rel. Johnson v. Johnson*, 531 F.2d 169, 177 n.19 (3d Cir. 1976); *see also Elias
v. Superintendent Fayette SCI*, 2017 WL 5192476 (W.D. Pa. Nov. 9, 2017), *aff'd* 774 F. App'x
745, 751 (3d Cir. 2019) (counsel's decision not to call the defendant to testify in murder trial,
after promising to do so during opening, was not an unreasonable change in trial strategy);
*McAleese v. Mazurkiewicz*, 1 F.3d 159, 167 (3d Cir. 1993) ("even if we could imply into the
opening a promise . . . [counsel's] later decision not to [call alibi witness] is not necessarily
ineffective").

Here, the defense pursued a coherent strategy of trying to undermine the credibility of
the agents and cooperators.  The record is clear that the decision not to call the alibi witness
followed from a process of deliberation, with Mr. Davis himself involved in the discussion.  At
a minimum, the witness would have been effectively cross-examined on the basis of her
romantic relationship with the defendant, and her clear incentive to have him at liberty because
they shared a child.  Thus, even if Judge McLaughlin had limited the scope of cross-
examination, defense counsel risked a potential loss of credibility with the jury simply by virtue
of calling a witness with such an obvious stake in the outcome.  Many trial decisions involve
some trade off, where counsel must weigh whether the benefits of calling a witness outweigh
the risks.  Subtle judgment calls made by trial counsel will seldom support a finding of
ineffective assistance.

The weakness of the alibi witness based on her close connection to the defendant further
undercuts Petitioner's ability to show prejudice.  Under *Strickland,* a defendant "must establish
a reasonable probability – one sufficient to undermine our confidence in the outcome – that the
jury's verdict would have been different if not for counsel's errors."  *Gray*, 878 F.2d at 712

(citation omitted).  The witness here was hardly a disinterested party likely to be given great credence by the jury – one would expect her to rise to the defense of her romantic partner. Given the extensive evidence against Mr. Davis, in particular his admissions to the agents, there is no reason to expect that the jury's verdict in this case would have been different based upon the proposed alibi testimony.

　　　　　　　　　　　　　　　　　　　  /s/ Gerald Austin McHugh　
　　　　　　　　　　　　　　　　　　　United States District Judge